# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
### CIVIL ACTION NO. 1:14-CV-050-GCM-DCK

| | |
|---|---|
| **CHARLES CORRIHER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **MEMORANDUM AND** |
| **v.** ) | **RECOMMENDATION** |
| ) | |
| **CAROLYN W. COLVIN,** ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**THIS MATTER IS BEFORE THE COURT** on the "Plaintiff's Motion For Summary Judgment" (Document No. 8) and "The Commissioner's Motion For Summary Judgment" (Document No. 13). This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b)(1)(B). After careful consideration of the written arguments, the administrative record, and applicable authority, the undersigned will respectfully recommend that "Plaintiff's Motion For Summary Judgment" be <u>denied</u>; that "The Commissioner's Motion For Summary Judgment" be <u>granted</u>; and that the Commissioner's decision be <u>affirmed</u>.

## I.    BACKGROUND

Plaintiff Charles Corriher ("Plaintiff"), through counsel, seeks judicial review of an unfavorable administrative decision on his application for disability benefits. (Document No. 1). On August 18, 2011, Plaintiff filed applications for a period of disability and disability insurance benefits ("DIB") under Title II and Part A of Title XVIII of the Social Security Act and for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. § 1383, alleging an inability to work due to a disabling condition beginning May 30, 2010. (Transcript of the Record of Proceedings ("Tr.") 17, 211-12, 213-221). The Commissioner of Social Security

(the "Commissioner" or "Defendant") denied Plaintiff's initial applications on January 3, 2012, which were not further pursued. (Tr. 17).

On or about August 25, 2012, Plaintiff filed applications for a period of disability and/or DIB under Title II and Part A of Title XVIII of the Social Security Act, and for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. § 1383, alleging an inability to work due to a disabling condition beginning May 30, 2010. (Tr. 17, 225-226, 227-235). The Commissioner denied Plaintiff's renewed applications on October 18, 2012, and again after reconsideration on January 8, 2013. (Tr. 17, 134-151, 155-172). In its "Notice of Reconsideration," the Social Security Administration ("SSA") included the following explanation of its decision:

> The medical evidence shows that your condition was not severe enough prior to the end of your insured period to be considered disabling. We do not have sufficient vocational information to determine whether you could have performed any of your past relevant work. However, based on the evidence in file, we have determined that you could have adjusted to other work.
>
> Therefore, based on all of the medical and non-medical evidence, we have decided that you were not disabled on or before coverage ended according to the Social Security Act.

(Tr. 155); see also (Tr. 159-171).

Plaintiff filed a timely written request for a hearing on March 12, 2013. (Tr. 173-75). On June 14, 2013, Plaintiff appeared and testified at a hearing before Administrative Law Judge John L. McFadyen ("ALJ"). (Tr. 17, 35-50). In addition, G. Mark Leaptrot, a vocational expert ("VE"), and Holly J. Fairbairn, Plaintiff's attorney, appeared at the hearing. (Tr. 17, 35).

The ALJ issued an unfavorable decision on July 2, 2013, denying Plaintiff's claim. (Tr. 14-16, 17-28). Plaintiff filed a request for review of the ALJ's decision on September 3, 2013, which was denied by the Appeals Council on December 20, 2013. (Tr. 13, 1-3). The July 2, 2013

ALJ decision thus became the final decision of the Commissioner when the Appeals Council denied Plaintiff's review request. (Tr. 1).

Plaintiff's "Complaint" seeking a reversal of the ALJ's determination, or remand, was filed in this Court on February 24, 2014. (Document No. 1). On March 3, 2014, the undersigned was assigned to this case as the referral magistrate judge.

"Plaintiff's Motion For Summary Judgment" (Document No. 8) and "Memorandum In Support Of Plaintiff's Motion For Summary Judgment" (Document No. 8-1) were filed June 27, 2014; and "The Commissioner's Motion For Summary Judgment" (Document No. 13) and "Memorandum In Support Of The Commissioner's Motion For Summary Judgment" (Document No. 14) were filed October 9, 2014. Plaintiff has declined the opportunity to file a response/reply. See (3:13-mc-198-FDW, Document No. 1, p.3).

The pending motions are ripe for disposition, and therefore, a memorandum and recommendation to the Honorable Graham C. Mullen is now appropriate.

## II.    STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456 (4th Cir. 1990); see also, Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir.

2012).  "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence.  Hays, 907 F.2d at 1456;  King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case de novo when reviewing disability determinations.");  Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistences in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion.").  Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome.  Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III.    DISCUSSION

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, at any time between May 30, 2010, and Plaintiff's date last insured.[1]  (Tr. 18, 27).  To establish entitlement to benefits, Plaintiff has the burden of proving that he was disabled within the meaning of the Social Security Act.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

---

[1]  Under the Social Security Act, 42 U.S.C. § 301, the term "disability" is defined as an: inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.  Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

(1)    whether claimant is engaged in substantial gainful activity - if yes, not disabled;

(2)    whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509 - if no, not disabled;

(3)    whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1, and meets the duration requirement - if yes, disabled;

(4)    whether claimant has the residual functional capacity ("RFC") to perform her/his past relevant work - if yes, not disabled; and

(5)    whether considering claimant's RFC, age, education, and work experience he/she can make an adjustment to other work - if yes, not disabled.

20 C.F.R. § 404.1520(a)(4)(i-v). In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. 27-28).

Specifically, the ALJ first concluded that Plaintiff had not engaged in any substantial gainful activity since May 30, 2010, his alleged disability onset date. (Tr. 20). At the second step, the ALJ found that "subjective complaints of scoliosis and low back pain, with little or no objective findings; history of ADHD, stable on medication; and affective disorders," were severe impairments.[2] (Tr. 20). At the third step, the ALJ determined that Plaintiff did not have an

---

[2] The determination at the second step as to whether an impairment is "severe" under the regulations is a *de minimis* test, intended to weed out clearly unmeritorious claims at an early stage. See Bowen v. Yuckert, 482 U.S. 137 (1987).

impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 20-21).

Next, the ALJ assessed Plaintiff's RFC and found that he retained the capacity to perform

> light work as defined by 20 CFR 404.1567(b) and 416.967(b), simple, repetitive work, no work with the public, better with things than people, can interact with supervisors and co-workers.

(Tr. 21). The regulations define light work as:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 CFR 404.1567(b) and 416.967(b).

In making his finding, the ALJ specifically stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p." (Tr. 21). The ALJ opined that "the statements concerning the intensity, persistence and limiting effects of the claimant's symptoms are not entirely credible for the reasons explained in this decision." (Tr. 25).

At the fourth step, the ALJ found that Plaintiff could not perform his medium unskilled past relevant work as a dishwasher. (Tr. 26). At the fifth and final step, the ALJ concluded based on the testimony of the VE and "considering the claimant's age, education, work experience, and residual functional capacity" that jobs existed in significant numbers in the national economy that

6

Plaintiff could perform. (Tr. 27). Specifically, the ALJ noted the VE's testimony that according to the factors given by the ALJ, occupations claimant could perform included representative occupations such as office helper, routing clerk and office mail clerk. (Tr. 27). Therefore, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, at any time from May 30, 2010, through Plaintiff's date last insured, September 30, 2012, and/or through the date of the ALJ's decision, July 2, 2013. (Tr. 17-18, 27-28).

Plaintiff on appeal to this Court makes the following assignments of error: (1) improper assessment of mental impairment; (2) improper treatment of opinion evidence; and (3) improper assessment of residual functional capacity. (Document No. 8-1, p.5). The undersigned will discuss each of these contentions in turn.

**A.      Mental Impairment**

1.   Special Technique:  20 CFR § 404.1520a

In his first assignment of error, Plaintiff argues that the ALJ failed in the application of a "special technique" for the evaluation of all mental condition impairments. (Document No. 8-1, p5) (citing 20 CFR § 404.1520a (2014)).

> This process assesses the severity of mental impairments by analyzing the degree of functional limitations the impairments cause in each of four functional categories. "Specific findings as to the degree of limitation in each of the functional areas" must be made, per the regulation, and included in the written decision. These "specific findings" must describe "the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairments."

Id. (quoting 20 CFR §404.1520a(e)(2) (2014)).

Plaintiff avers that the ALJ failed to "articulate 'specific findings' of the Plaintiff's history, medical findings, and functional limitations." (Document No. 8-1, p.6). Moreover, Plaintiff

asserts that the ALJ's failure to make "specific findings" is not salvaged by his step four analysis, because "very little of it is devoted to objective medical findings about his mental impairments." (Document No. 8-1, p.7).

According to Plaintiff, the "record is unusually full of exam and laboratory findings on mental issues." (Document No. 8-1, p.8). Plaintiff contends that the ALJ has failed to adequately represent those findings and "completely failed to address four mental opinions that contradict his RFC, three by treating providers." Id. Plaintiff concludes that the ALJ's failure to document the special technique is an error requiring remand.

Defendant asserts that "the ALJ's evaluations were proper and supported by substantial evidence." (Document No. 14, p.5). Regarding application of the special technique, Defendant notes that Plaintiff acknowledged that the ALJ cited to State Agency reviewers' opinions. See (Document No. 8-1, p.6) (citing Tr. 20-21). According to Defendant:

> There can be little doubt that the ALJ incorporated the special techniques of those State Agency reviewers. The ALJ noted that these physicians found that Plaintiff had only mild restrictions in activities of daily living, moderate difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation, each of extended duration (Tr. 20-21, citing Exhibit 6A [(Tr. 117]). This rating of these four broad areas is the special technique evaluation required under the regulations. See 20 C.F.R. § 404.1520a(c)(3).

(Document No. 14, p.5).

Defendant further asserts that the State Agency opinion specifically cited to was based on a broad analysis of the medical record, with considerable explanation/analysis of the record pertaining to each alleged limitation. (Document No. 14, p.5); see also, (Tr. 20-21) (citing Tr. 110-124). While the ALJ stated he gave "some weight" to the State agency psychologist's opinion, he clarified that based on Plaintiff's subjective complaints, he "reduced the RFC to simple, repetitive

work, with no work with the public…." <u>See</u> (Document No. 14, p.5); (Tr. 21).

Defendant contends it is clear that "the ALJ fully adopted the well-reasoned special technique opinion" and the "regulations only require that the ALJ 'incorporate' special technique findings, which can be either his own new findings or incorporating findings in the record." (Document No. 14, p.6); (citing <u>Hall v. Astrue</u>, 2:11-cv-24-MR-DLH, 2012 WL 1313242, at *4-5 (W.D.N.C., March 26, 2012), <u>adopted by</u> 2012 WL 1313193 (W.D.N.C. April 17, 2012) (ALJ fulfilled his duty under special technique in similar facts to this case)). Defendant concludes that the ALJ fulfilled his duty regarding a special technique in this case. (Document No. 14, p.6).

The undersigned finds Defendant's argument and authority regarding the ALJ's application of the special technique to be persuasive. (Document No. 14, pp.5-6). The regulation relied upon by Plaintiff states in part:

> (e) Documenting application of the technique. At the initial and reconsideration levels of the administrative review process, **we will complete a standard document to record how we applied the technique**. At the administrative law judge hearing and Appeals Council levels (in cases in which the Appeals Council issues a decision), we will document application of the technique in the decision. The following rules apply:
> . . .
>> (4) At the administrative law judge hearing and Appeals Council levels**, the written decision must *incorporate* the pertinent findings and conclusions based on the technique**.
>> . . .

20 CFR §404.1520a(e)(4) (emphasis added).

Contrary to Plaintiff's alleged error, it appears that the ALJ properly incorporated the pertinent findings and conclusions. <u>See</u> (Tr. 20-21) (citing. Tr. 110-124). Moreover, findings incorporated by the ALJ, dated January 4, 2013, appear consistent with previous State agency findings on October 16, 2012. <u>Compare</u> (Tr. 110-124) <u>with</u> (Tr. 63-77). These findings appear to be based on review of a significant amount of evidence. <u>See</u> (Tr. 64-67, 111-114).

Plaintiff accurately notes that the "record is unusually full of exam and laboratory findings on mental issues, and that the exams yielded recurring positive findings (poor eye contact, tangential or disorganized thinking, fair and poor judgment and insight) that corroborate treating provider opinions and the Plaintiff's claims." (Document No. 8-1, p.8). However, the undersigned respectfully disagrees with Plaintiff's conclusion that the information cited by the ALJ does not represent those recurrent findings. See (Tr. 20-26) (citing Tr. 110-124, 255-262, 1067-1158, 1159-1165).

Based on the foregoing, including Judge Howell's instructive decision cited above, the undersigned finds that the ALJ adequately incorporated the "special technique" as required by the regulations. See Hall, 2012 WL 1313242, at *4-5;  20 CFR §404.1520a(e).

2.  The Listings:  20 CFR § 404.1520

Next, Plaintiff alleges that the ALJ erred in evaluating the Plaintiff's mental impairments against the Listings.  (Document No. 8-1, pp.9-15) (citing 20 CFR §§ 404.1520, 416.920 (2014)). Plaintiff asserts that he "presented a medical opinion addressing each component part – each criterion – of Listing 12.04, but the ALJ ignored it." (Document No. 8-1, p.11). Plaintiff notes that "Listing 12.04 defines the severity of the work limitations imposed by Affective Disorders at which Social Security will pay benefits for those disorders alone without further regard to the presence or severity of other conditions.  (Document No. 8-1, pp.10-11) (citing 20 CFR § 404.1520).

Plaintiff points to an Affective Disorders Questionnaire executed by Dr. Anthony Weisenberger ("Weisenberger") on January 9, 2013, which purportedly shows that Plaintiff was afflicted with major depressive order, recurrent;  and PTSD.  (Document No. 8-1, pp.11-12)(citing Tr. 958-961).  Plaintiff notes that Dr. Weisenberger's January 2013 opinion was based on a 10-

month period of intensive treatment, beginning in March 2012, and including over 75 appointments with Weisenberger and his staff. (Document No. 8-1, p.13). After six more months of treatment, Dr. Wiesenberger executed a Mental Capacity Questionnaire on June 13, 2013, that reaffirmed his earlier opinion and diagnosed Plaintiff with major depression, PTSD, avoidant personality disorder, chronic back pain, GERD, ulcerative colitis, and assessed a GAF score of 35. (Document No. 8-1, p.13).

Plaintiff concludes that remand is required, based on the ALJ's failure to properly apply the 12.04 listing, and the ALJ's failure to harmonize the contrary findings of the non-examining physicians with those of the treating physician. (Document No. 8-1, pp.14-15).

Defendant contends the ALJ properly analyzed the Listings. (Document No. 14, p.6). Defendant goes on to assert that the special technique, addressed above, "is the B part of the Listings, and that "[s]ince the ALJ based his determination on what he deemed a credible and appropriate assessment of the four elements of the B part of the Listings, those findings conclude that Plaintiff did not meet a B part requirement." Id. "Thus, Plaintiff cannot meet a mental impairment Listing." Id.

The undersigned observes that the ALJ expressly addressed his evaluation of Plaintiff's alleged mental impairments, including citation to evidence in the record, and concluded that Plaintiff did not meet the criteria of a Listing. See (Tr. 20-21).

> The claimant's impairments do not meet or equal the criteria of an impairment listed in the Listing of impairments as found in Appendix 1, Subpart P of Regulation s No. 4. This is **consistent with the objective evidence of record and the opinions of the State Agency physicians**.
>
> The severity of the **claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.02, 12.04, 12.06, and 12.09**. In making this finding, the undersigned has considered whether the "paragraph B"

criteria are satisfied. . . .

The State Agency psychologists state that the claimant experiences 12.02 - Organic Mental Disorders, 12.04 -Affective Disorders, 12.06 -Anxiety-Related Disorders, and 12.09 - Substance Addiction Disorders that do not meet or equal the criteria of a Listing. **The claimant's impairments impose mild restrictions in the activities of daily living, moderate difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation, each of extended duration**. The evidence does not establish the presence of the "C" criteria (Exhibit 6A). Some weight is given to the findings of the State Agency psychologists; however, the undersigned reduced the RFC to simple, repetitive work, with no work with the public, better with things than people, and can interact with supervisors and co-workers due to consideration of the claimant's subjective complaints.

Because the claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied.

The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria.

(Tr. 20-21).

Plaintiff acknowledges that the ALJ made the point that Plaintiff's ability to get a Master's Degree was inconsistent with a finding that he met a Listing. (Document No. 8-1, p.14, n.5) (citing Tr. 26) ("The undersigned gives little weight to the assessment from Dr. Wiesenberger as these limitations are not consistent with the **objective evidence of record <u>or</u>** the claimant's **ability to get his Master's Degree**.") (emphasis added). However, Plaintiff goes on to suggest that there are significant questions regarding whether or not Plaintiff earned a Master's Degree. (Document No. 8-1, p.14-15, n.5) ("no <u>documentation</u> that he actually completed his Master's Degree is of record, and other evidence suggests that it is still not complete"). The undersigned is concerned that Plaintiff and/or his counsel are less than certain about what degrees he has achieved. This

confusion is all the more perplexing since it was Plaintiff's counsel who questioned him on this

issue at the hearing. (Tr. 38-39). After being duly sworn at the hearing, Plaintiff engaged in the

following exchange with his counsel, Holly Fairbairn of Chitwood & Fairbairn, P.A., who is in the

same firm as Cynthia Holman, Plaintiff's current counsel:

> Q. All right. And how much school have you had?
>
> A. Quite a bit. I dropped out of high school, but finished community college high school and then got federal aid money, and **I have an Associate's and a Bachelor's and a Master's degree** -
>
> Q. Okay.
>
> A. - - all on federal aid.
>
> Q. Okay. **So you finished the Master's degree?**
>
> A. **I finally did, yeah**. There was a lapse of about three years before I could finish it because I couldn't take the senior comprehensive exam, but yeah. I stopped going to classes in 2008, and I guess I passed comps finally in 2011.
>
> Q. Okay

(Tr. 38-39). The record also reflects that Plaintiff had an "A" average in his graduate studies.

(Tr. 325). The ALJ's decision notes more than once that Plaintiff has indicated that he plans to

obtain a Ph.D. (Tr. 25-26).

Plaintiff's argument that the ALJ failed to properly evaluate his mental impairments against

the Listings appears to be largely based on the fact that the ALJ's conclusions on this issue differ

from those of treating physician Weisenberger. (Document No. 8-1, pp.11-14). Plaintiff states

that the ALJ "**ignored** this treating physician opinion." (Document No. 8-1, p.15). Plaintiff's

statement is inaccurate – in fact, the ALJ discussed Dr. Weisenberger's findings in some detail,

and explicitly cited the "Mental Capacity Questionnaire" completed by Dr. Wiesenberger on June

13, 2013.[3] (Tr. 24) (citing Tr. 1159-1164).

Based on the foregoing, the undersigned is not persuaded that the ALJ erred in his evaluation of Plaintiff's mental impairments. As noted above, it is not for this Court to "make findings of fact and to resolve conflicts in the evidence." Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d at 599. To the extent Plaintiff has alleged error under the assessment of mental impairment section of his argument based on lack of consideration of the opinion evidence, that issue will be further addressed below.

**B.      Opinion Evidence**

Next, Plaintiff asserts that the regulations dictate the ALJ's process for evaluating medical source evidence, and that the ALJ here was obligated to apply those regulations to seven psychological opinions of record: "We will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive." (Document No. 8-1, p.15) (citing 20 C.F.R. § 404.1520b (2014)). Plaintiff notes that the relevant opinions are: three opinions by treating provider Anthony Weisenberger, M.D.; one by treating provider Eric A. Pyeritz, M.D.; two by State Agency record reviewers W.W. Albertson, Ed.D. and Jennifer Fulmer, Ph.D.; and one by an other-agency source, Tonya Clark, Vocational Rehabilitation Specialist for NCDHHS. Id. (no citations in original).

Plaintiff's argument is difficult to follow, but it appears he is arguing that the ALJ ignored and/or improperly weighed Weisenberger's opinion(s), and completely failed to consider other medical opinions. Moreover, Defendant's briefing appears to conflate two of Plaintiff's arguments

---

[3] The undersigned believes that there is an important distinction between an ALJ ignoring evidence, and an ALJ giving evidence less weight than a party might prefer. Counsel is respectfully advised to proceed with caution before declaring that an ALJ ignored evidence, especially if that evidence is clearly cited in the ALJ's decision.

into one section. Both sides seem to structure their arguments loosely, with points on some issues spilling over to other sections in the briefs.

While the ALJ's decision is not a model of clarity, the undersigned is not persuaded that the ALJ's weighing of the opinion evidence constitutes reversible error. Again, contrary to Plaintiff's suggestion that the ALJ failed to consider certain opinions, the undersigned finds that the ALJ explicitly discusses Dr. Pyeritz's findings and cites to extensive evidence in the record. (Tr. 22, 26) (citing Tr. 1067-1158). Despite suggesting the ALJ failed to consider or weigh the Albertson and Fulmer opinions, Plaintiff later acknowledges that the ALJ gave "only 'some' weight to the Albertson and Fulmer opinions." (Document No. 8-1, p.24); see also, (Tr. 26). The ALJ reduced the RFC proposed by the State agency psychologists. (Tr. 26).

Regarding Weisenberger, the undersigned is not persuaded by Plaintiff's argument that the ALJ erred by failing to consider the letter Dr. Weisenberger sent to the Appeals Council on August 27, 2013, several weeks *after* the ALJ's decision, and almost a year after Plaintiff's date last insured. (Tr. 1224-1226). As Plaintiff acknowledges, this letter ("opinion") was considered by the Appeals Council. (Document No. 8-1, p.19); see also, (Tr. 4). In short, it appears that the ALJ gave ample consideration of the opinion of treating physician Weisenberger and cited substantial evidence supporting the weight he assigned to Weisenberger's opinion(s).

Finally, the undersigned agrees that the ALJ did not expressly address the "other-agency" opinion of vocational rehabilitation counselor Tonya Clark ("Clark") of NCDHHS. (Document No. 8-1, pp.15, 23-24) (citing Tr. 644-646). However, the undersigned is not convinced that the ALJ's failure to specifically cite Clark's brief "opinion" is adequate grounds for remand. The crux of Clark's "opinion" seems to be that Plaintiff is eligible for vocational rehabilitation, but that he is not consistent in his participation. (Tr. 644-646). The undersigned finds that Clark's opinion is

consistent with other evidence cited by the ALJ, including the reference in the ALJ's decision that Plaintiff is eligible for vocational rehab and that he has been unwilling to follow vocational rehab's suggestions for the most part.  See (Tr. 24).

In sum, the undersigned finds that the parties' briefing on the issue of the opinion evidence is wanting, and that the ALJ's citation to the opinions he considered was less than ideal; nevertheless, the undersigned declines to find any error requiring remand.  Although Plaintiff disagrees with how the ALJ weighed the opinions, it appears that the ALJ properly considered the opinions, except perhaps that of Tonya Clark, and reached a decision supported by substantial evidence.  If the ALJ erred by not specifically citing Clark's opinion, the undersigned believes such oversight in this instance was harmless.

## C.    Residual Functional Capacity

Finally, Plaintiff asserts that the ALJ did not follow applicable law and that his RFC was not supported by substantial evidence.  (Document No. 8-1, p.24-25).  Plaintiff's one paragraph final argument is essentially a summary of his previous claims, and presents little, if any, new information.  Id.

Defendant makes the following effective observations drawn from the opinions of Dr. Weisenberger:

> When Dr. Weisenberger did see Plaintiff, his notes are quite revealing.  For example, on April 4, 2012, Dr. Weisenberger noted that while Plaintiff's mood was dysthymic, his affect was congruent, speech was unremarkable, behavior was cooperative;   while his thought process was tangential/circumstantial, he had no active psychotic symptoms or suicidal or other harmful thoughts (Tr. 815).  Regarding memory and cognition, he had "probable" ADHD scattered thinking, but no cognitive deficits were noted in the session.  Dr. Weisenberger noted in his assessment that maybe he was having a mild withdrawal from alcohol, possibly suggesting this had something to do with his ADHD like symptoms including tangential or circumstantial thought process.

However, by the next two evaluations, one on May 23, 2012 and one on June 20, 2012, his evaluations were quite good (Tr. 681-682, 698-699). Plaintiff had cooperative behavior, unremarkable movement, neutral/stable mood (in June, but the month earlier in May his mood was dysthymic), mood was congruent, speech was unremarkable, thought process and associations were logical and coherent, no active psychotic symptoms or observed, and there were no specific cognitive deficits noted in the session. Even his judgment, which includes alcohol abuse, was deemed "fair" (Tr. 699), noting that he admitted his illness and accepted help (Tr. 681). These findings, which are quite good, and consistent with someone who was mastering a Masters in English, are also quite inconsistent with Dr. Weisenberger's opinion from a questionnaire (Tr. 958-961) that painted a picture of someone incapable of much of anything.

(Document No. 14, pp.8-9). Defendant notes that although Plaintiff cites a lot of negative evidence, none of it explains how Plaintiff was able to function well enough to complete Masters courses. (Document No. 14, p.9).

The undersigned agrees that substantial evidence supports the ALJ's decision, and thus, the Court is expected to uphold that decision, even if the Court could justify a different conclusion. (Document No. 14, p.9).

## IV. CONCLUSION

The undersigned finds that there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and thus substantial evidence supports the Commissioner's decision. Richardson v. Perales, 402 U.S. 389, 401 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). As such, the undersigned will recommend that the Commissioner's decision be affirmed.

## V. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that: "Plaintiff's Motion For Summary Judgment" (Document No. 8) be **DENIED**; "The

Commissioner's Motion For Summary Judgment" (Document No. 13) be **GRANTED**; and the Commissioner's determination be **AFFIRMED**.

## VI.    TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed **within fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to de novo review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenhour, 889 F.2d 1363, 1365 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), reh'g denied, 474 U.S. 1111 (1986).

**IT IS SO RECOMMENDED**.

Signed: May 14, 2015

David C. Keesler
United States Magistrate Judge